[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Motion To Suppress
Defendant, John Cabral, was arrested without a warrant during the evening on October 28, 1998. He was charged with conspiracy to possess more than one kilogram of marijuana, C.G.S. §§ 53a-48 and 21a-278 (b) and, criminal attempt to possess more than one kilogram of marijuana, C.G.S. §§ 53a-49 and 21a-278 (b).
His arrest stemmed from an investigation which showed John Anderson, CT Page 1416 David Levarge and Cabral were involved in a scheme to sell marijuana.
The police knew from Levarge, who was cooperating with the police, that Levarge had a large amount of marijuana. Levarge arranged to have Cabral pick up the package of marijuana from the rear seat floor of an automobile parked in Levarge's yard. Levarge turned over that marijuana to the police. The police placed a package in the automobile wrapped the same way as the marijuana package Levarge handed over to the police.
A number of police were staked out at Levarge's.
At approximately 8:45 p.m., Cabral went to the vehicle, partially entered the rear seat and removed a package. As Cabral walked away from the car with the package, he was immediately stopped by the police. He dropped the package.
Later that night, Cabral told the police something to the effect that the was picking up the marijuana for Anderson.
The evidentiary portion of the trial began on June 28, 2000. At 10:18 a.m. on that day, Cabral's counsel file a motion to suppress.
The Motion To Suppress stated:
 MOTION TO SUPPRESS Pursuant to the authority of Connecticut Rules of Court, chapter 41, section 41-12, the above captioned defendant respectfully requests this Honorable court suppress any statement allegedly made by the above captioned defendant at and/or after his arrest on October 28, 1998.
 This motion is based on the fact that when questioned by the police he requested the opportunity to call an attorney. Never the less the police insisted on questioning the defendant in contravention of his constitutional rights. Further, the defendant was not Mirandized before questioning by the police.
 Any alleged statement was obtained in contravention of this defendant's state and federal constitutional rights and ought to be suppressed.
THE DEFENDANT By: /s/ John O'Brien
CT Page 1417
The court informed it would start the trial and would take up the motion to suppress when the state was about to introduce the statement made by Cabral.
Later that day, the state's attorney advised that the offer of the statement was imminent. The jury was excused and the hearing on the motion to suppress was held. Transcript of Proceedings, June 28, 2000, pp. 58-73.
As the evidence was to begin for the suppression hearing, counsel for Cabral stated:
 "The motion that I've submitted in reference to this matter indicates that Mr. Cabral tried to exercise his constitutional rights under the Miranda warning and was not afforded an opportunity to do so." Transcript of Proceedings, June 28, 2000, p. 59.
Counsel's statement, just quoted, narrowed the scope of the hearing. That statement, particularly, "under the Miranda warning," conceded Cabral had been given Miranda warnings, thereby narrowing the suppression issue to a claim the police persisted in questioning him after he said he wanted to have a lawyer. It was during the questioning after Cabral said he wanted a lawyer that Cabral made the statement which was the subject of the suppression motion.
Sergeant Robert Bardelli of the state police testified. As soon as Cabral left the car at the Levarge residence, he was stopped by police. He was arrested. Cabral, in handcuffs, was placed in a police vehicle. Bardelli testified he (Bardelli) advised him of the Miranda rights. Cabral made no statements at this time.
Cabral was then driven by a police officer to a location described as a gas station on Route 32 in Montville where the police were to meet. This location was just minutes away from Levarge's residence.
Sometime later, Bardelli arrived at the gas station. Cabral was there in custody. Bardelli was told Cabral had asked whether there some way he could help himself out in the situation.
Bardelli and or other officers told Cabral about a phone conversation and what the police had learned in their investigation.
Cabral then made a statement that he was just picking up the marijuana for Anderson. The police asked him if he would be willing to give them a CT Page 1418 written statement. Cabral at that time stated he wanted a lawyer. There was no further conversation thereafter.
Bardelli was the only suppression hearing witness. Bardelli testified Cabral never mentioned a lawyer or made a request for a lawyer before he made the statement to be suppressed. According to Bardelli, after Cabral made the statement, he was asked if he would give a written statement. Only then did he request a lawyer. Once he said he wanted a lawyer, the police asked him nothing and Cabral made no further statements(s)
Although, Cabral could have done so with impunity, he did not testify at the suppression hearing.
Bardelli's testimony was not challenged or impugned in any way.
The basis for defendant's motion was that he had been questioned after he had "requested the opportunity to call an attorney.
The court held the defendant was in police custody when he made the statement that he was just picking up the marijuana for Anderson.
The court held Cabral had been given Miranda warnings before he made the statement. Defendant's counsel conceded he was given Miranda
warnings.
It was the defendant's burden to prove he was interrogated. State v.Wright, 58 Conn. App. 136, 142 (2000). After Cabral indicated he wanted to help himself, the police told him what they knew from their investigation. Doing so, they should have known anything he told them "to help himself" was quite likely to be incriminating to him. Id., 141.
The court held the statement was the product of interrogation.
Cabral made the statement he sought to suppress. Only when asked if he would give a written statement did Cabral balk. He then exercised his right to remain silent, did not thereafter talk to the police invoking his right to counsel. The Motion to Suppress alleges "defendant was not Mirandized before questioning by the police." At no time during the suppression hearing was any point raised or made regarding the term, "Mirandized." It refers, of course, to those warnings required by Mirandav. Arizona, 384 U.S. 436 (1966). Counsel for the parties and the sole witness used that term without any explanation of what that entailed. Since counsel for Cabral had stated Cabral "tried to exercise his constitutional rights under the Miranda warning [Cabral had been given]," the accuracy, completeness, etc., of that warning was not an issue at the suppression hearing. CT Page 1419
The motion to suppress was untimely. See Practice Book §§ 41-5 and 41-15. The court so held.
For the foregoing reasons, the court denied the motion to suppress.
Parker, J.